UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

XIJIE CHEN, an individual; and
RED FLOWER CAPITAL, LLC,
a Florida limited liability company,

      Plaintiffs,

                                    Case No. 8:25-cv-02695

v.

GIRO KATSIMBRAKIS, an individual;
YINAN ZHAO KATSIMBRAKIS, an individual;
PALLADIO DEVELOPMENT LLC,
a Florida limited liability company;
KGG RESIDENTIAL FUND INC.,
a Florida corporation;
PALLADIO CONSTRUCTION LLC,
a Florida limited liability company;
KGG COMMERCIAL FUND INC.,
a Florida corporation; PLUTUS BUILDERS INC.,
a Florida corporation; GENX STEEL INC.,
a Florida corporation; YANG TAO LLC,
a Florida limited liability company; ECO-GREEN
WASTE & PORTABLES INC. a Florida  corporation;
and TB SUPPLY, INC. a Florida corporation;

      Defendants.

## <u>COMPLAINT</u>

Plaintiffs XIJIE CHEN ("Chen" or "CJ Chen") and RED FLOWER

CAPITAL, LLC ("Red Flower") (collectively, "Plaintiffs"), by and through their

undersigned counsel, hereby file this Complaint against Defendants GIRO KATSIMBRAKIS ("Giro"), YINAN ZHAO KATSIMBRAKIS ("Yinan"), PALLADIO DEVELOPMENT LLC ("Palladio Development"), KGG RESIDENTIAL FUND INC. ("KGG Residential"), PALLADIO CONSTRUCTION LLC ("Palladio Construction"), KGG COMMERCIAL FUND INC. ("KGG Commercial"), PLUTUS BUILDERS INC. ("Plutus"), GENX STEEL INC., ("GenX"), YANG TAO LLC ("Yang Tao"), ECO-GREEN WASTE & PORTABLES INC. ("Eco-Green"), and TB SUPPLY, INC. ("TB Supply") (collectively, "Defendants"), and in support thereof allege as follows:

## I. PRELIMINARY STATEMENT

1.     This action arises from an elaborate, calculated, and ongoing fraudulent scheme orchestrated by Defendants Giro Katsimbrakis and Yinan Zhao Katsimbrakis, who, through a web of interrelated shell companies and sham entities, have systematically defrauded Plaintiffs of more than Two Million Five Hundred Thousand Dollars ($2,500,000.00) over the course of nearly a decade, beginning in 2016 and continuing through the present day.

2.     The Katsimbrakis defendants, operating from their California base while targeting Florida real estate investments, have perpetrated what can only be characterized as a sophisticated Ponzi-like scheme, wherein they solicited massive capital contributions from Plaintiffs under the false pretense of

legitimate real estate development ventures, only to divert, misappropriate, and convert these funds for their personal use and benefit, leaving Plaintiffs with nothing but empty promises, fraudulent documentation, and catastrophic financial losses.

3.      Through their Byzantine network of shell entities, the individual Defendants have engaged in a pattern of fraudulent conduct that includes making material misrepresentations about investment opportunities, fabricating development progress, concealing the true disposition of invested funds, failing to provide any meaningful accounting or documentation, and ultimately absconding with Plaintiffs' entire investment capital while leaving behind a trail of unfulfilled obligations, unpaid taxes, mechanic's liens, and abandoned properties.

4.      The scope and audacity of Defendants' fraudulent enterprise is evidenced by the fact that, upon information and belief, there are hundreds of lawsuits currently pending against the Katsimbrakis defendants and their various entities throughout the Florida court system, revealing a pattern of systematic fraud that extends far beyond the instant Plaintiffs and demonstrates the urgent need for federal court intervention to prevent further dissipation of assets and ongoing harm to victims of this scheme.

5.     Plaintiffs bring this action seeking not only compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), but also statutory damages, punitive damages, injunctive relief, the imposition of constructive trusts, the appointment of receivers, and all other equitable remedies necessary to unwind this fraudulent enterprise and prevent the Katsimbrakis defendants from continuing their predatory practices against other unsuspecting investors.

## II. PARTIES

6.     Plaintiff Xijie Chen, also known as CJ Chen, is an individual and citizen of the People's Republic of China who, at all times material hereto, has resided in Orange County, California, and who has invested substantial sums in what he believed to be legitimate Florida real estate ventures organized and managed by Defendants.

7.     Plaintiff Red Flower Capital, LLC is a Florida limited liability company with its principal place of business located at 7901 4th Street N, Suite 25798, St. Petersburg, Florida 33702, which entity was formed by and is wholly owned by Plaintiff Chen for the purpose of facilitating real estate investments and which has suffered substantial losses as a direct and proximate result of Defendants' fraudulent conduct.

8.    Defendant Giro Katsimbrakis is an individual who, upon information and belief, is a citizen of the State of California, maintaining his primary residence at 18 Portmarnoch Court, Coto De Caza, California 92679, and conducting business operations from an office located at 26060 Acero, Suite 209, Mission Viejo, California 92691, and who has orchestrated, directed, and personally benefited from the fraudulent scheme alleged herein.

9.    Defendant Yinan Zhao Katsimbrakis is an individual who, upon information and belief, is a citizen of the State of California, maintaining her primary residence at 18 Portmarnoch Court, Coto De Caza, California 92679, and conducting business operations from an office located at 26060 Acero, Suite 209, Mission Viejo, California 92691, and who has actively participated in, facilitated, and personally benefited from the fraudulent scheme alleged herein.

10.    Defendant Palladio Development LLC is a Florida limited liability company that, upon information and belief, maintains its principal place of business in Florida with registered agent addresses in Pinellas County, Hillsborough County, or surrounding areas within the Middle District of Florida, which entity was created, controlled, and utilized by the individual Defendants as a vehicle for their fraudulent scheme.

11.    Defendant KGG Residential Fund Inc. is a Florida corporation that, upon information and belief, maintains its principal place of business in Florida

with registered agent addresses in Pinellas County, Hillsborough County, or surrounding areas within the Middle District of Florida, which entity was created, controlled, and utilized by the individual Defendants as a vehicle for their fraudulent scheme.

12.     Defendant Palladio Construction LLC is a Florida limited liability company that, upon information and belief, maintains its principal place of business in Florida with registered agent addresses in Pinellas County, Hillsborough County, or surrounding areas within the Middle District of Florida, which entity was created, controlled, and utilized by the individual Defendants as a vehicle for their fraudulent scheme.

13.     Defendant KGG Commercial Fund Inc. is a Florida corporation that, upon information and belief, maintains its principal place of business in Florida with registered agent addresses in Pinellas County, Hillsborough County, or surrounding areas within the Middle District of Florida, which entity was created, controlled, and utilized by the individual Defendants as yet another vehicle for their fraudulent scheme.

14.     Defendant PLUTUS BUILDERS INC. is a Florida corporation formed on December 20, 2021, maintaining its registered agent at 7901 4th Street N, Suite 300, St. Petersburg, Florida 33702, within this District, with Defendant Yinan Zhao Katsimbrakis serving as its President and maintaining a mailing

address at 26060 Acero, Suite 209, Mission Viejo, California 92691, which entity was created, controlled, and utilized by the individual Defendants as an additional vehicle for their fraudulent scheme to obscure the origin and disposition of misappropriated investor funds.

15.    Defendant GENX STEEL INC. is a Florida corporation formed on May 30, 2023, with its principal place of business at 1143 Eldridge Street, Unit B1, Clearwater, Florida 33755, within this District, and with Defendant Yinan Zhao Katsimbrakis serving as its President, which entity was created and operated by Defendants as part of their pattern of establishing multiple corporate entities to facilitate the fraudulent diversion and concealment of investor funds.

16.    Defendant YANG TAO LLC is a Florida limited liability company formed on June 11, 2021, with its principal place of business at 1143 Eldridge Street, Suite B1, Clearwater, Florida 33755, within this District, and with Defendant Yinan Zhao Katsimbrakis serving as its Manager, which entity, upon information and belief, was named after and utilized in conjunction with Yinan's mother, Yang Tao, to create additional layers of concealment for fraudulently obtained funds and to place assets beyond the reach of creditors.

17.    Defendant ECO-GREEN WASTE & PORTABLES INC. is a Florida corporation formed on December 24, 2019, maintaining its registered agent at 7901 4th Street N, Suite 300, St. Petersburg, Florida 33702, within this District,

7

with Defendant Yinan Zhao serving as its President, which entity predates many of the fraudulent transactions alleged herein and was utilized by Defendants as part of their expanding network of entities designed to receive, conceal, and dissipate fraudulently obtained investor funds.

18.    Defendant TB SUPPLY, INC. is a Florida corporation originally formed on January 27, 2017, and reinstated on October 11, 2019, with its principal place of business at 1143 Eldridge Street, Suite B1, Clearwater, Florida 33755, within this District, with Defendant Yinan Zhao serving as Vice President, which entity has been operated in concert with the other Defendant entities to facilitate the fraudulent scheme through the commingling and diversion of investor funds.

19.    Although not a named Defendant, ASAM Properties LLC is a Florida limited liability company that was purportedly formed as a joint venture between Plaintiff Chen's family and Defendant Yinan Zhao Katsimbrakis, with its principal place of business in Florida and operations involving properties located in Pasco County and other areas within the Middle District of Florida, which entity has been utilized by Defendants as a primary vehicle for defrauding Plaintiffs.

### III. JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States,

specifically the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Plaintiff alleges that Defendants engaged in a pattern of racketeering activity, including but not limited to mail fraud, wire fraud, and other predicate acts enumerated under 18 U.S.C. § 1961(1), in violation of 18 U.S.C. § 1962. Accordingly, this Court has jurisdiction over Plaintiff's RICO claims pursuant to federal question jurisdiction.

21.    This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal RICO claims asserted herein that they form part of the same case or controversy under Article III of the United States Constitution. The state-law claims arise from the same nucleus of operative facts as the federal claims, involve overlapping evidence, and will be resolved by similar legal and factual determinations.

22.    In sum, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, with Defendants having engaged in a pattern of racketeering activity including mail fraud and wire fraud in violation of 18 U.S.C. § 1962.

23.     This Court has personal jurisdiction over all Defendants because the corporate and limited liability company Defendants are organized under Florida law and maintain their principal places of business within this District, while the individual Defendants have purposefully availed themselves of the privilege of conducting business in Florida, have established substantial and continuing contacts with this state through their operation of multiple Florida entities and real estate ventures, and have committed tortious acts within this state that have caused injury to Plaintiffs.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including the formation and operation of the fraudulent entities, the solicitation of investments for Florida properties, the diversion and misappropriation of funds intended for Florida real estate projects, and the ongoing concealment of Defendants' fraudulent activities through Florida-based entities.

25.     Additionally, venue is proper in this District because several of the Defendant entities maintain their principal places of business within this District, numerous properties that were the purported subjects of the fraudulent investment scheme are located within this District, and Defendants have

conducted substantial business operations within this District throughout the relevant time period.

## IV. FACTUAL BACKGROUND

**A. The Genesis of the Fraudulent Scheme: The ASAM Properties Venture.**

28.    The fraudulent scheme perpetrated by Defendants began in early 2016 when Defendants Giro and Yinan Katsimbrakis approached Plaintiff Chen's father, Yan Chen, with what they represented to be an "extraordinary" opportunity to invest in Florida real estate through a joint venture that would not only generate substantial returns but also potentially facilitate the Chen family's path to permanent United States residency.

29.    In furtherance of their scheme, on or about March 18, 2016, Defendants caused to be filed Articles of Amendment for ASAM Properties LLC in the State of Florida, adding Yan Chen as a manager of the company and creating the appearance of a legitimate joint venture between sophisticated real estate developers and a foreign investor seeking both financial returns and immigration benefits.

30.    Contemporaneously with the filing of the Articles of Amendment, on or about March 18, 2016, Defendant Yinan Zhao (now Yinan Zhao Katsimbrakis) and Yan Chen executed an Operating Agreement for ASAM Properties LLC, which purported to establish an ownership structure whereby

Yinan Zhao would hold an eighty percent (80%) ownership interest in exchange for a Two Hundred Thousand Dollar ($200,000.00) capital contribution, while Yan Chen would hold a twenty percent (20%) ownership interest in exchange for a Three Hundred Thousand Dollar ($300,000.00) capital contribution.

31.    The disparity in capital contributions versus ownership percentages—with Yan Chen contributing fifty percent (50%) more capital than Yinan Zhao but receiving only one-quarter of her ownership interest—was explained by Defendants as reflecting the value of their supposed expertise, experience, and active management of the venture, representations that would prove to be entirely fraudulent.

32.    According to the representations made by Defendants at the time of ASAM's formation, the Katsimbrakis defendants would be responsible for all aspects of the operation, including but not limited to identifying suitable properties for acquisition, managing the development and construction process, handling all accounting and financial reporting, and ultimately generating returns through rental income and property appreciation, while the Chen family's sole obligation would be to provide capital for investment opportunities identified by Defendants.

33.    In reliance upon these representations and the apparently legitimate structure of the joint venture, in August 2016, Plaintiff Chen caused to be wired

the sum of Three Hundred Sixty-Five Thousand Three Hundred Eighty-Five Dollars ($365,385.00) to an account controlled by Defendant Yinan Zhao, which funds were represented to be for ASAM's initial investment capital and for legal counsel relating to the Chen family's permanent residency application.

34.    Almost immediately after receiving this substantial initial investment, Defendants began exhibiting the pattern of conduct that would characterize their entire fraudulent scheme: within six months of the initial investment, all salary payments to Yan Chen ceased without explanation, no investment returns were ever distributed despite repeated promises, and Defendants provided no meaningful documentation or accounting for how the invested funds were being utilized.

**B.    The Escalation of the Fraud: Additional Property Investments.**

35.    Despite the concerning lack of returns or transparency regarding the initial ASAM investment, Defendants continued to solicit additional investments from Plaintiffs, leveraging the trust they had established and making increasingly bold representations about the profitability of their Florida real estate ventures.

36.    In October 2016, Defendants represented to Plaintiffs that they had identified exceptional investment opportunities in rental properties that would generate immediate cash flow and long-term appreciation, inducing Plaintiff

Chen to wire an additional Two Hundred Thousand Dollars ($200,000.00) to an account controlled by Defendant Yinan Zhao for the purported purchase of two rental properties located at 6006 9th Avenue and 5122 School Road.

37.     Contemporaneously with this transaction, on or about October 10, 2016, Defendants caused to be executed a Purchase Agreement and HUD-1 Settlement Statement for the acquisition of a third property located at 10106 Willow Drive, with Plaintiff Chen and Defendant Yinan Zhao listed as parties to the transaction.

38.     In November 2016, in further reliance upon Defendants' representations regarding the profitability of these investments and their proper management of the properties, Plaintiff Chen wired an additional Seventy Thousand Dollars ($70,000.00) to an account controlled by Defendant Yinan Zhao for the purchase of the property at 10106 Willow Drive.

39.     While Defendants did cause Corporate Warranty Deeds to be recorded transferring ownership of the properties at 6006 9th Avenue and 5122 School Road from ASAM to Plaintiff Chen—recorded on October 18, 2016, and November 23, 2016, respectively—no such deed was ever recorded for the property at 10106 Willow Drive, despite Plaintiff Chen's payment of the full purchase price.

40.    The fraudulent nature of Defendants' conduct regarding the 10106 Willow Drive property became apparent when, on or about August 22, 2017, Defendants caused ASAM Properties LLC to execute an ALTA Settlement Statement and General Warranty Deed selling the property to a third party, Tyler Moynihan, without Plaintiff Chen's knowledge or consent and without any distribution of the sale proceeds to Plaintiff Chen.

41.    When confronted about the unauthorized sale of 10106 Willow Drive, Defendants represented to Plaintiff Chen that the proceeds would be reinvested in other profitable ventures and that Plaintiff Chen would receive both a return of his principal investment and a share of the profits from the reinvestment, representations that proved to be entirely false as Plaintiff Chen never received any funds from the sale or any subsequent investments.

**C.  The Warehouse Investment Fraud.**

42.    Between February and May 2017, Defendants approached Plaintiffs with what they characterized as an exceptional opportunity to invest in a warehouse property that would generate substantial returns through both rental income and eventual resale at a significant profit.

43.    Defendants represented that they had identified a prime warehouse facility in an area experiencing rapid commercial growth, that they had negotiated favorable acquisition terms, and that the property would be

immediately income-producing upon acquisition with pre-arranged tenants ready to sign long-term leases.

44.    In reliance upon these representations, between February and May 2017, Plaintiff Chen and his father Yan Chen collectively submitted Three Hundred Six Thousand Five Hundred Sixty-Two Dollars ($306,562.00) to Defendant Yinan Zhao through a combination of wire transfers and cash payments for the purported warehouse investment.

45.    The use of cash payments for a portion of this investment was represented by Defendants as necessary to navigate foreign currency controls imposed by the People's Republic of China, with Defendants assuring Plaintiffs that all funds would be properly documented and accounted for in ASAM's books and records.

46.    Despite repeated requests over the ensuing months and years, Defendants have never provided any documentation demonstrating that a warehouse property was actually acquired with Plaintiffs' funds, have never provided any evidence of rental income from such a property, have never provided any financial statements or tax returns showing the existence of such an investment, and have never provided any explanation for what became of the Three Hundred Six Thousand Five Hundred Sixty-Two Dollars ($306,562.00) invested by Plaintiffs.

**D. The Pattern of Fraud Continues: The Palladio Entities.**

47.    Having successfully extracted nearly One Million Dollars ($1,000,000.00) from Plaintiffs through the ASAM venture with no meaningful returns or accountability, Defendants expanded their fraudulent scheme by creating additional entities through which to solicit further investments from Plaintiffs.

48.    In or around 2019, Defendant Giro Katsimbrakis formed KGG Residential Fund Inc. and began representing to Plaintiffs that this new entity would pursue larger-scale development projects with even greater return potential than the ASAM investments.

49.    Defendants also formed Palladio Development LLC and Palladio Construction LLC, representing these entities as professional development and construction companies that would enable vertical integration of their real estate ventures and maximize profits by eliminating third-party contractor margins.

50.    Through these new entities, Defendants continued to solicit investments from Plaintiffs for various purported real estate projects, including but not limited to a development project at 2273 Wagonwheel Avenue, for which job cost reports indicate that Two Hundred Fifty-One Thousand Three Hundred Fifty-Seven Dollars ($251,357.00) was expended in December 2021.

51.    Plaintiff Red Flower Capital, LLC, which had been formed by Plaintiff Chen to facilitate his real estate investments, began issuing checks and making wire transfers to Defendants' various entities based on Defendants' continuing representations that these funds would be used for legitimate development projects that would generate substantial returns.

52.    For example, in 2023, Red Flower Capital wired Eleven Thousand Dollars ($11,000.00) to Palladio entities for what Defendants represented to be permit costs and engineering fees for development projects, with check memoranda and invoices referencing projects involving multiple residential lots.

**E.  The Vipassana Joint Venture and Continued Fraud.**

53.    In 2023, perhaps recognizing that Plaintiffs were becoming increasingly concerned about the lack of returns and accountability from their investments, Defendants proposed a new joint venture structure through an entity called Vipassana Resi, LLC, which they represented would provide Plaintiffs with greater control and transparency.

54.    Under the terms of the Vipassana partnership, Red Flower Capital would hold a forty percent (40%) ownership interest while KGG Residential Fund Inc. would hold a sixty percent (60%) ownership interest, with Red Flower contributing capital and KGG providing construction and management services.

55.    Defendants represented that this new structure would ensure proper documentation, regular reporting, and timely completion of development projects, inducing Plaintiffs to contribute additional capital to the venture.

56.    However, true to their established pattern of fraud, Defendants failed to commence any meaningful construction activities, failed to provide any financial reporting or documentation, and failed to respond to Plaintiffs' increasingly urgent demands for information and accountability.

**F.  The Loan Documentation Scheme.**

57.    As Plaintiffs became increasingly insistent on documentation for their investments and returns on their capital, Defendants engaged in a new phase of their fraudulent scheme by purporting to convert some of the invested funds into formal loan obligations.

58.    Between 2022 and 2024, Defendants caused various loan agreements and promissory notes to be executed, including but not limited to a loan agreement dated August 15, 2022, between Plaintiff Chen and KGG Residential Property Fund Inc. for Three Hundred Thousand Dollars ($300,000.00), and multiple promissory notes between Red Flower Capital and Palladio Development LLC.

59.    These loan documents, which Defendants represented would provide greater security and ensure repayment of Plaintiffs' investments,

contained specific terms regarding interest payments, maturity dates, and in some cases, purported to grant security interests in real property.

60.     However, Defendants' execution of these loan documents was merely another aspect of their fraudulent scheme, as they never intended to honor the obligations created thereby, never made the required interest payments, never repaid principal upon maturity, and never provided the security interests promised in the documents.

61.     Indeed, Defendants' fraud extended even to the handling of the loan documentation itself, as they failed to return original promissory notes to Plaintiffs after closing, claimed that documents had been lost in the mail, and refused to provide proper documentation of the security interests they had promised.

## G. The Unraveling of the Scheme and Current Status.

62.     By late 2024 and early 2025, Defendants had ceased virtually all communication, had failed to make any payments on any of their obligations, and had refused to provide any accounting for the more than Two Million Five Hundred Thousand Dollars ($2,500,000.00) that Plaintiffs had invested.

63.     Plaintiffs' investigation into Defendants' activities revealed the shocking scope of their fraudulent enterprise, including the discovery that there

are hundreds of lawsuits pending against the Katsimbrakis defendants and their various entities throughout the Florida court system.

64.     These lawsuits reveal a pattern of conduct whereby Defendants would solicit investments for real estate projects, fail to complete the projects or pay contractors and suppliers, allow properties to fall into tax delinquency resulting in tax deed sales, and ultimately abandon the projects while retaining the invested funds.

65.     Many of the properties that were purportedly purchased or developed with Plaintiffs' funds are encumbered by multiple liens for unpaid contractors, suppliers, and taxes, with some properties having already been lost to tax deed sales, causing irreparable harm to Plaintiffs' interests.

66.     Upon information and belief, Defendants have diverted the funds invested by Plaintiffs for their personal use, including but not limited to purchasing luxury vehicles, funding their lifestyle in their multimillion-dollar California residence, and potentially transferring funds to offshore accounts or other concealed locations.

67.     Despite formal demands for payment, accountings, and information regarding the status of their investments, Defendants have refused to provide any meaningful response, have refused to return any portion of Plaintiffs'

invested capital, and have effectively absconded with the entire amount of Plaintiffs' investments.

**H. The Individual Defendants' Control and Alter Ego Status.**

68.    Throughout the entire course of their fraudulent scheme, Defendants Giro and Yinan Katsimbrakis have exercised complete dominion and control over all of the entity Defendants, using them interchangeably and without regard to corporate formalities as vehicles for their fraud.

69.    The entity Defendants have at all times been mere alter egos of the individual Defendants, with no legitimate business purpose other than to facilitate the individual Defendants' fraudulent scheme and to create the false appearance of legitimate business enterprises.

70.    The individual Defendants have systematically disregarded corporate formalities, commingled funds between entities and their personal accounts, used entity funds for personal expenses, failed to maintain proper corporate records, and treated the entities' assets as their own personal property.

71.    Upon information and belief, the individual Defendants have also utilized family members and associates, including Yinan's mother Yang Tao, to create additional layers of concealment for their fraudulent activities, forming entities in others' names while maintaining actual control.

72.    The corporate veils of all entity Defendants should be pierced, and the individual Defendants should be held personally liable for all damages caused by their fraudulent scheme, as adherence to the fiction of separate corporate existence would sanction fraud and promote injustice.

## I.   Defendants' Fraudulent Business Model.

73.    Defendants' fraudulent scheme follows a consistent pattern that can only be characterized as a sophisticated Ponzi-like operation designed to extract maximum capital from investors while providing minimal or no legitimate value in return.

74.    The scheme begins with Defendants identifying potential investors, particularly foreign nationals who may be less familiar with United States real estate practices and more vulnerable to fraud, and making grandiose representations about their experience, expertise, and track record in real estate development.

75.    Defendants then create seemingly legitimate corporate entities with professional-sounding names and purported business addresses, execute official-looking documentation, and make specific representations about identified properties and development opportunities to create the illusion of authentic business operations.

76.    Once Defendants have gained investors' trust and extracted initial capital contributions, they employ various tactics to solicit additional investments, including showing falsified progress reports, providing tours of properties that they do not actually intend to develop, and making increasingly ambitious promises about returns.

77.    When investors begin requesting returns or information about their investments, Defendants employ delay tactics, make excuses about market conditions or construction delays, provide falsified documentation, or propose restructuring investments into new entities or projects, all designed to prevent investors from realizing they have been defrauded.

78.    Throughout this process, Defendants maintain the façade of legitimate business operations by occasionally making small payments, providing limited documentation, or showing apparent progress on projects, while in reality diverting the vast majority of invested funds for their personal use.

79.    When investors become too insistent or threatening legal action, Defendants simply cease communication, abandon whatever minimal legitimate business activities they may have undertaken, and move on to new victims, leaving behind a trail of unfulfilled obligations, liens, and worthless paper.

**J.  Impact on Plaintiffs.**

80.    As a direct and proximate result of Defendants' fraudulent scheme, Plaintiffs have suffered catastrophic financial losses exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), representing years of accumulated wealth and the destruction of Plaintiff Chen's financial security.

81.    Beyond the direct financial losses, Plaintiffs have incurred substantial additional damages including lost opportunity costs from being unable to invest their capital in legitimate ventures, interest and penalties on obligations they have been unable to meet due to the loss of their capital, and extensive legal fees incurred in attempting to recover their investments.

82.    Plaintiffs have also suffered severe emotional distress, including anxiety, depression, and loss of sleep resulting from the financial devastation caused by Defendants' fraud and the betrayal of trust by individuals they believed to be legitimate business partners.

83.    The fraudulent scheme has also damaged Plaintiffs' business reputation and relationships, as Plaintiff Chen has been unable to meet financial obligations to other parties who were expecting returns from what they believed were legitimate investments, causing a cascade of financial harm beyond the direct losses to Defendants.

84.    Plaintiff Chen, as a foreign national who entrusted Defendants with his life savings based on their representations of expertise in United States real

estate markets, has been particularly devastated by the fraud, having lost not only his financial resources but also his faith in the integrity of American business practices.

**K. Ongoing Harm and Need for Immediate Relief**.

85.     Plaintiffs continue to suffer ongoing harm from Defendants' fraudulent scheme, as properties that were purportedly purchased with Plaintiffs' funds continue to deteriorate, accumulate liens and encumbrances, and face tax deed sales and foreclosure proceedings.

86.     Upon information and belief, Defendants continue to dissipate and transfer assets that rightfully belong to Plaintiffs, including potentially transferring funds to offshore accounts, selling properties without accounting for proceeds, and distributing assets to family members or other insiders.

87.     Without immediate judicial intervention, including the imposition of preliminary and permanent injunctive relief, the appointment of receivers, and the freezing of Defendants' assets, Plaintiffs face the prospect of complete and irreversible loss of any possibility of recovery.

88.     The pattern of hundreds of lawsuits against Defendants throughout Florida demonstrates that they are judgment-proof serial fraudsters who will continue to dissipate assets and defraud additional victims unless stopped by this Court's intervention.

89.     Time is of the essence, as each passing day increases the risk that additional properties will be lost to tax sales, that Defendants will further dissipate assets, and that the trail of fraudulently obtained funds will become increasingly difficult to trace and recover.

**L.  Defendants' Scienter and Fraudulent Intent**.

90.     Defendants' fraudulent intent is demonstrated by the systematic nature of their scheme, the consistency of their misrepresentations across multiple transactions and years, their use of multiple shell entities to obscure their activities, and their complete failure to provide any legitimate business services or returns despite extracting millions of dollars from Plaintiffs.

91.     The individual Defendants' scienter is further evidenced by their personal participation in making false representations to Plaintiffs, their direct receipt and control of Plaintiffs' funds, their failure to use the funds for the represented purposes, and their eventual abandonment of all pretense of legitimate business operations.

92.     Defendants knew at the time they made representations to Plaintiffs about investment opportunities, expected returns, and the security of Plaintiffs' capital that these representations were false, or at minimum, made these representations with reckless disregard for their truth or falsity.

93.    The corporate entity Defendants, being mere alter egos and instrumentalities of the individual Defendants, acted with the same fraudulent intent as their individual controllers, as they had no independent existence or legitimate business purpose apart from facilitating the fraudulent scheme.

**M. Conspiracy Among Defendants.**

94.    All Defendants conspired and acted in concert to defraud Plaintiffs, with each Defendant playing a specific role in the overall scheme while sharing the common purpose of extracting and converting Plaintiffs' investment capital.

95.    The individual Defendants orchestrated and directed the conspiracy, while the entity Defendants served as vehicles for executing the scheme, creating false documentation, and obscuring the true nature of the fraudulent transactions.

96.    Each Defendant committed overt acts in furtherance of the conspiracy, including making false representations, accepting fraudulently obtained funds, creating false documentation, failing to perform promised services, and concealing the true disposition of Plaintiffs' investments.

97.    The conspiracy continues to this day, as Defendants continue to conceal assets, refuse to provide accountings, and work together to prevent Plaintiffs from recovering their investments or discovering the full extent of the fraud.

**N. Pattern of Racketeering Activity.**

98.    Defendants knowingly, willfully, and unlawfully conducted or participated, directly or indirectly in a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961 consisting of multiple predicate acts of mail fraud, wire fraud, and money laundering in violation of federal law.

99.    Defendants knowingly, willfully, and unlawfully conducted or participated, directly or indirectly through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961.

100.    Defendants used the United States mail and interstate wire communications to further their fraudulent scheme, including sending fraudulent documentation, making false representations via email and telephone, and causing interstate wire transfers of fraudulently obtained funds.

101.    These racketeering acts were not isolated but rather were related in that they had the same or similar purposes and results, participants and methods of operation.

102.    The pattern of racketeering activity spans from 2016 to the present, involves multiple victims including but not limited to Plaintiffs, and represents a continuing threat to the public as Defendants continue to operate their fraudulent enterprise.

103.    Defendants and other third parties have exclusive custody or control over the records reflecting the precise dates, amounts, locations and details of transactions in violation of the racketeering acts.

104.    Each wire transfer constituted a separate predicate act of wire fraud, as Defendants knowingly and intentionally made material misrepresentations through interstate wire communications to induce each transfer, knowing that the funds would not be used for the represented purposes but rather would be diverted for Defendants' personal benefit.

105.    Defendants' enterprise, consisting of the association-in-fact of the individual Defendants and their various corporate entities, exists for the common purpose of defrauding investors through false real estate investment schemes, and this enterprise is separate and distinct from the pattern of racketeering activity through which it operates.

## O. Fraudulent Transfers

106.    Defendants have engaged in numerous fraudulent transfers of Plaintiffs' funds and assets acquired with Plaintiffs' funds, transferring them to insiders, family members, and other entities without fair consideration and with the intent to hinder, delay, and defraud Plaintiffs' collection efforts.

107.    These fraudulent transfers include but are not limited to transfers between the various entity Defendants, transfers to the individual Defendants

personally, transfers to family members including Yang Tao, and transfers to unknown third parties, all designed to place assets beyond Plaintiffs' reach.

108.   Defendants made these transfers at times when they were insolvent or rendered insolvent by the transfers, with actual intent to defraud creditors including Plaintiffs, and without receiving reasonably equivalent value in exchange for the transfers.

109.   All such fraudulent transfers should be avoided and reversed, with the transferred assets returned to satisfy Plaintiffs' claims against Defendants.

110.   Defendants' fraudulent transfers and money laundering activities included: (a) conducting financial transactions with proceeds of wire fraud by transferring fraudulently obtained funds between multiple entity defendants to disguise their origin; (b) structuring transactions through multiple entities to avoid detection and create the appearance of legitimate business activity; (c) using fraudulently obtained funds to purchase real property titled in various entity names to conceal the true ownership and source of funds; and (d) layering transactions through Plutus Builders, GenX Steel, Yang Tao LLC, and other entities to obscure the audit trail of stolen investor funds.

**P.  Breach of Fiduciary Duties.**

111.   By virtue of the partnership and joint venture relationships created through ASAM Properties LLC and Vipassana Resi LLC, and by virtue of their

position of trust and confidence vis-à-vis Plaintiffs, Defendants owed fiduciary duties to Plaintiffs including duties of loyalty, care, candor, and good faith.

112.    Defendants grossly breached these fiduciary duties by diverting partnership assets for personal use, failing to account for partnership funds, self-dealing without disclosure or consent, abandoning their management responsibilities, and ultimately converting the entire value of Plaintiffs' investments.

113.    As managing members and controlling persons of the joint venture entities, the individual Defendants had heightened fiduciary obligations to protect Plaintiffs' interests, which obligations they violated in the most egregious manner possible by stealing Plaintiffs' entire investment.

114.    The entity Defendants, as vehicles for the joint ventures and investment projects, similarly owed and breached fiduciary duties to Plaintiffs by facilitating the individual Defendants' misappropriation of assets and failing to maintain proper books and records.

**Q. Unjust Enrichment of Defendants.**

115.    Defendants have been unjustly enriched by their retention of Plaintiffs' investment funds and the benefits derived therefrom, including but not limited to personal use of funds, acquisition of assets, and funding of their lifestyles.

116.   Plaintiffs conferred these benefits upon Defendants based on Defendants' false representations and promises of legitimate investment returns, and Defendants' retention of these benefits without providing any value to Plaintiffs violates fundamental principles of justice, equity, and good conscience.

117.   The amount of Defendants' unjust enrichment includes not only the principal amounts invested by Plaintiffs but also all gains, profits, and benefits Defendants have derived from the use of Plaintiffs' funds over the years.

118.   Defendants should be required to disgorge all benefits they have received from Plaintiffs and to pay restitution in an amount to be determined at trial but not less than Two Million Five Hundred Thousand Dollars ($2,500,000.00).

**R. Conversion of Plaintiffs' Funds.**

119.   Plaintiffs entrusted Defendants with funds for specific purposes—namely, investment in identified real estate projects with the expectation of returns—creating a bailment relationship whereby Defendants held Plaintiffs' funds for these specific purposes.

120.   Defendants converted Plaintiffs' funds by using them for purposes other than those for which they were entrusted, by refusing to return the funds upon demand, and by exercising dominion and control over the funds inconsistent with Plaintiffs' rights.

121.    Defendants' conversion was willful and malicious, as they knew they were depriving Plaintiffs of their property rights and acted with conscious disregard for Plaintiffs' rights in the funds.

122.    As a result of Defendants' conversion, Plaintiffs have been deprived of funds exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00) and are entitled to recover this amount plus statutory and punitive damages for Defendants' willful and wanton conduct.

**S.  Equitable and Injunctive Relief is Required.**

123.    Plaintiffs have no adequate remedy at law for Defendants' ongoing fraudulent conduct, as money damages alone cannot prevent Defendants from continuing to dissipate assets, cannot unwind the complex web of fraudulent transfers, and cannot provide the accounting and transparency necessary to trace Plaintiffs' funds.

124.    Immediate injunctive relief is necessary to prevent Defendants from transferring, encumbering, or dissipating any assets that may be available to satisfy Plaintiffs' claims, including but not limited to real property, bank accounts, vehicles, and any other tangible or intangible assets.

125.    The appointment of a receiver is necessary and appropriate to take control of the entity Defendants and their assets, to investigate and account for

all funds received from Plaintiffs, to pursue recovery of fraudulently transferred assets, and to marshal assets for distribution to defrauded investors.

126.   The imposition of constructive trusts is appropriate over all assets acquired by Defendants using Plaintiffs' funds, as Defendants hold these assets as constructive trustees for Plaintiffs' benefit and should be required to convey them to Plaintiffs.

127.   This Court should exercise its full equitable powers to fashion complete relief for Plaintiffs, including but not limited to ordering forensic accountings, appointing monitors or special masters, and entering such other orders as justice requires to unwind Defendants' fraudulent scheme.

## T.  Plaintiff's Damages.

128.   As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs have suffered actual damages in an amount exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), representing their total invested capital that Defendants have stolen and refused to return.

129.   Plaintiffs are also entitled to consequential damages including lost opportunity costs, as they were prevented from investing their capital in legitimate ventures that would have generated actual returns during the relevant time period.

130.    Plaintiffs are entitled to statutory trebled damages and punitive damages in an amount to be determined at trial, as Defendants' conduct was fraudulent, willful, wanton, and exhibited a complete disregard for Plaintiffs' rights and for the standards of civilized business conduct.

131.    Plaintiffs are entitled to pre-judgment and post-judgment interest on all amounts owed, as well as attorneys' fees and costs to the extent permitted by law or contract, including under provisions of the various agreements executed by Defendants.

132.    The total damages suffered by Plaintiffs continues to increase daily as Defendants continue to retain and benefit from Plaintiffs' funds, as properties continue to deteriorate and accumulate liens, and as Plaintiffs incur additional costs in pursuing recovery of their investments.

**U.    Summary of Allegations**

133.    Plaintiffs have sufficiently alleged the elements required to establish liability under the federal RICO statute, 18 U.S.C. §§ 1961–1968, and its Florida counterpart, Fla. Stat. Chapter 895. Defendants Giro and Yinan Katsimbrakis, together with the network of corporate entities they controlled, formed and operated an "enterprise" within the meaning of both statutes. That enterprise affected interstate and foreign commerce through the repeated solicitation of funds from Plaintiffs in California and China, the transfer of millions of dollars

by interstate wire into Florida, and the use of interstate mail and communications to further the scheme. Defendants engaged in a continuous pattern of racketeering activity, including numerous predicate acts of wire fraud, mail fraud, money laundering, and fraudulent transfers, spanning nearly a decade and involving repeated inducements, misrepresentations, and diversions of capital.

134.   As a direct and proximate result of this ongoing racketeering enterprise, Plaintiffs have suffered injury to their business and property in excess of $2.5 million, including the loss of all invested funds, the deprivation of returns promised under fraudulent agreements, and consequential damages arising from Defendants' concealment and conversion of assets. These allegations satisfy the requirement that Plaintiffs plead the existence of an enterprise, a pattern of racketeering activity consisting of at least two related predicate acts, a nexus to interstate commerce, and concrete financial injury caused "by reason of" the RICO violations. Plaintiffs therefore state actionable claims under both federal and Florida RICO, and their claims are supported by the detailed factual allegations set forth herein.

## CAUSES OF ACTION

## COUNT I
### Operation of a RICO Enterprise in Violation of 18 U.S.C. §§ 1961-1968

135.    Plaintiffs re-allege and incorporate by reference paragraphs 1-134 as though fully set forth herein.

136.    Defendants Giro Katsimbrakis, Yinan Katsimbrakis (a/k/a Yinan Zhao), KGG Residential Fund Inc., Palladio Development LLC, Palladio Construction LLC, and Vipassana Resi LLC, along with other unnamed entities and individuals, constitute an "enterprise" as defined in 18 U.S.C. § 1961(4).

137.    At all relevant times, Defendants were "persons" within the meaning of 18 U.S.C. § 1961(3) and each knowingly conducted, controlled, managed, supervised, directed, or owned all or part of an illegal enterprise.

138.    The enterprise was formed for the common purpose of soliciting investments under false pretenses, misappropriating investor funds, and concealing the fraud through sham agreements, fabricated documents, and false promises of returns and immigration benefits.

139.    The enterprise engaged in, and its activities affected, interstate and foreign commerce through the use of wire transfers, emails, interstate bank accounts, and the U.S. mail.

140.    Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), consisting of repeated violations of:

· Wire Fraud (18 U.S.C. § 1343);
· Mail Fraud (18 U.S.C. § 1341);
· Money Laundering (18 U.S.C. § 1956); and

- Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity (18 U.S.C. § 1957).

141.   The racketeering activity was not limited to:

- Soliciting funds under false pretenses regarding real estate investments;
- Misrepresenting ownership interests and uses of investor funds;
- Diverting invested funds for personal expenses;
- Falsely executing legal instruments (operating agreements, promissory notes, and purchase agreements);
- Failing to return invested capital or profits;
- Fabricating reinvestment opportunities to delay exposure;
- Selling jointly owned property without consent or distribution of proceeds;
- Failing to provide proper accounting, reporting, or documentation; and
- Using various corporate entities to obscure the origin, flow, and use of funds.

142.   The foregoing actions constitute predicate acts of racketeering within the meaning of 18 U.S.C. §1961(1).

143.   In relevant part, 18 U.S.C. § 1962 provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . .

(b)It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

144.    In violation of 18 U.S.C. §1962(a), Defendants received income derived from the pattern of racketeering activity and used or invested, directly or indirectly, such income in the acquisition of interests in, or the establishment or operation of, the enterprise.

145.    In violation of 18 U.S.C. §1962(b), Defendants acquired or maintained, directly or indirectly, an interest in or control of the above enterprise through the racketeering activity described herein.

146.    In violation of 18 U.S.C. §1962(c), Defendants, employed by or associated with the enterprise, conducted or participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above.

147.    Defendants knowingly agreed to facilitate the operation of the racketeering enterprise and conspired with one another to violate 18 U.S.C. § 1962(a), (b), and (c), in violation of § 1962(d).

148.    The RICO enterprise was created or used as a tool to carry out the elements of Defendants' scheme and pattern of racketeering activity within the meaning of 18 U.S.C. § 1961 and included ascertainable structures and purposes

beyond the scope and commission of Defendants' predicate acts and conspiracy to commit such acts, in violation of 18 U.S.C. § 1962(a)–(d).

149.    The members of the RICO enterprise all had the common purpose of defrauding Plaintiffs.

150.    Plaintiffs have been injured in their business or property by Defendants' overt acts, and by their aiding and abetting the acts of others.

151.    Plaintiffs have been injured in their property by reason of Defendants' violations of 18 U.S.C. §§1962(a)-(d).

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), trebling of damages pursuant to 18 U.S.C. § 1964(c), punitive damages, and other damages, pre-judgment and post-judgment interest, costs, and attorney's fees. such other relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF THE FLORIDA RICO ACT
### Fla. Stat. § 895.03
### (Against All Defendants)

152.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

153.    Defendants and their associated entities constitute an "enterprise" under Fla. Stat. § 895.02(5), which engaged in a pattern of criminal activity through a continuing unit with a common purpose of defrauding persons and investors, including Plaintiffs.

154.    The enterprise engaged in conduct including, but not limited to:

- Scheming to defraud in violation of the Florida Communications Fraud Act (Fla. Stat. § 817.034);
- Organized fraud in violation of Fla. Stat. § 817.034(4);
- Money laundering in violation of the Florida Money Laundering Act (Fla. Stat. §§ 896.101) and 895.02(8); and
- Theft and misappropriation of investor funds.

155.    Defendants participated in at least two incidents of racketeering conduct with the same or similar intent, results, accomplices, victims, and methods of commission, not isolated events but related acts demonstrating a "pattern of racketeering activity" under Fla. Stat. § 895.02(7).

156.    Defendants violated the Florida RICO Act by, among other things:

- § 895.03(1): Receiving income from a pattern of racketeering and using or investing such income in real estate ventures.
- § 895.03(2): Acquiring or maintaining interest in or control of the enterprise through a pattern of racketeering.
- § 895.03(3): Conducting or participating in the enterprise's affairs through racketeering.
- § 895.03(4): Conspiring to violate subsections (1)–(3).

157.    Plaintiffs have been injured in their business or property by Defendants' overt acts, and by their aiding and abetting the acts of others.

158.    Plaintiffs have been injured in their property by reason of Defendants' violations of the Florida RICO Act.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), trebling of damages pursuant to Fla. Stat. § 895.05(6), and other damages, pre-judgment and post-judgment interest, costs, and attorney's fees. such other relief as this Court deems just and proper.

## COUNT III
## FRAUD IN THE INDUCEMENT
(Against All Defendants)

159.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

160.    Throughout the course of their relationship with Plaintiffs, beginning in 2016 and continuing through the present, Defendants made numerous material misrepresentations of fact to Plaintiffs, including but not limited to representations that investment funds would be used for specific real estate projects, that Defendants had the expertise and intention to complete such projects, that investments would generate specified returns, and that Plaintiffs' capital was secure.

161.    These representations of material fact were false when made, and Defendants either knew of their falsity or made them with reckless disregard for

their truth or falsity, as Defendants never intended to use Plaintiffs' funds for the represented purposes and never intended to provide the promised returns or security.

162.    Defendants made these false representations with the intent to induce Plaintiffs to provide investment capital, knowing that Plaintiffs would rely upon these representations in making their investment decisions.

163.    Plaintiffs justifiably relied upon Defendants' false representations, as the representations were made by individuals and entities holding themselves out as experienced real estate professionals, were supported by apparently legitimate documentation, and were consistent with normal business practices in the real estate investment industry.

164.    As a direct and proximate result of their reliance upon Defendants' fraudulent misrepresentations, Plaintiffs have suffered damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), plus consequential damages, lost opportunity costs, and other harm.

165.    Defendants' fraudulent conduct was intentional, malicious, and exhibited a reckless indifference to Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages in an amount to be determined at trial sufficient to punish Defendants and deter similar conduct.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, for compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), punitive damages, pre-judgment and post-judgment interest, costs, and such other relief as this Court deems just and proper.

**COUNT IV**
**FRAUDULENT CONCEALMENT**
(Against All Defendants)

164.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

165.    Throughout their fraudulent scheme, Defendants had superior knowledge of material facts that they had a duty to disclose to Plaintiffs, including but not limited to the fact that they were not using investment funds for the represented purposes, that they were diverting funds for personal use, that properties were not being developed as promised, and that Plaintiffs' investments were at risk of total loss.

166.    Defendants deliberately concealed these material facts from Plaintiffs through various means, including providing false progress reports, creating sham documentation, refusing to provide proper accountings, and making excuses for delays and lack of returns that obscured the true nature of their fraudulent scheme.

167.    Defendants had a duty to disclose these material facts to Plaintiffs by virtue of their fiduciary relationships through the joint venture entities, their position of trust and confidence, and their superior knowledge of facts that were not readily discoverable by Plaintiffs.

168.    Plaintiffs justifiably relied upon Defendants' concealment of material facts in continuing to provide investment capital and in refraining from taking legal action earlier, as Defendants' concealment was designed to and did prevent Plaintiffs from discovering the fraud.

169.    As a direct and proximate result of Defendants' fraudulent concealment, Plaintiffs have suffered damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), as they continued to invest funds and failed to take protective action based on Defendants' concealment of the true facts.

170.    Defendants' fraudulent concealment was willful, wanton, and malicious, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, for compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), punitive damages, pre-judgment and post-

judgment interest, costs, and such other relief as this Court deems just and proper.

## COUNT V
## CIVIL CONSPIRACY
(Against All Defendants)

171.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

172.    All Defendants entered into an agreement, understanding, and conspiracy among themselves to defraud Plaintiffs through a scheme of false representations, concealment, and conversion of investment funds.

173.    The object of the conspiracy was to induce Plaintiffs to provide investment capital under false pretenses, to convert that capital for Defendants' personal use and benefit, and to conceal the fraud through the use of multiple corporate entities and false documentation.

174.    Each Defendant committed multiple overt acts in furtherance of the conspiracy, including but not limited to: the individual Defendants making false representations and creating sham entities; the entity Defendants serving as vehicles for receiving and concealing fraudulently obtained funds; all Defendants working together to create false documentation and conceal the true disposition of funds.

175.    The conspiracy was successful in achieving its objectives, as Defendants successfully induced Plaintiffs to invest more than Two Million Five Hundred Thousand Dollars ($2,500,000.00) and have retained these funds for their own benefit while providing no value to Plaintiffs.

176.    As a direct and proximate result of Defendants' conspiracy, Plaintiffs have suffered damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), for which all Defendants are jointly and severally liable as co-conspirators.

177.    The conspiracy was formed and executed with malice and intent to injure Plaintiffs, entitling Plaintiffs to punitive damages against all Defendants.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, for compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), punitive damages, pre-judgment and post-judgment interest, costs, and such other relief as this Court deems just and proper.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
(Against All Defendants)

178.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

179.    By virtue of the partnership relationships created through ASAM Properties LLC and Vipassana Resi LLC, and by virtue of the trust and confidence reposed in Defendants by Plaintiffs, Defendants owed fiduciary duties to Plaintiffs including the duties of loyalty, care, full disclosure, and good faith.

180.    The individual Defendants, as managing members and controlling persons of the joint venture entities, had the highest fiduciary obligations to protect Plaintiffs' interests, to use invested funds solely for partnership purposes, to account for all partnership assets, and to act in good faith in all partnership matters.

181.    Defendants grossly breached their fiduciary duties by: diverting partnership funds for personal use; failing to use funds for represented purposes; self-dealing without disclosure or consent; failing to maintain proper books and records; failing to provide accountings; abandoning their management duties; and ultimately converting all of Plaintiffs' invested capital.

182.    Defendants' breaches of fiduciary duty were willful and in bad faith, as they consciously disregarded their duties to Plaintiffs and acted solely for their own benefit to Plaintiffs' detriment.

183.    As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered damages exceeding Two Million Five Hundred

Thousand Dollars ($2,500,000.00), representing their lost investment capital and additional consequential damages.

184.    Defendants' egregious breaches of fiduciary duty warrant the imposition of punitive damages and the disgorgement of all benefits Defendants obtained through their faithless conduct.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, for compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), disgorgement of all benefits obtained, punitive damages, pre-judgment and post-judgment interest, costs, and such other relief as this Court deems just and proper.

**COUNT VII**
**CONVERSION**
(Against All Defendants)

185.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

186.    Plaintiffs entrusted Defendants with funds exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00) for the specific purpose of investing in identified real estate projects, creating a bailment whereby Defendants held Plaintiffs' funds for these specific purposes.

187.    Defendants wrongfully exercised dominion and control over Plaintiffs' funds inconsistent with Plaintiffs' rights by using the funds for

purposes other than those for which they were entrusted, by refusing to return the funds upon demand, and by treating the funds as their own property.

188.   Plaintiffs made numerous demands upon Defendants for the return of their funds or for an accounting of how the funds were used, all of which demands Defendants have refused and continue to refuse.

189.   Defendants' conversion of Plaintiffs' funds was intentional and malicious, as they knew they had no right to use the funds for personal purposes or to refuse their return, yet did so with full knowledge of Plaintiffs' superior rights.

190.   As a direct and proximate result of Defendants' conversion, Plaintiffs have been deprived of their property in an amount exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00) and have suffered additional damages including lost use of their funds.

191.   Defendants' willful and wanton conversion of Plaintiffs' property entitles Plaintiffs to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, for compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), punitive damages, pre-judgment and post-judgment interest, costs, and such other relief as this Court deems just and proper.

## COUNT VIII
## UNJUST ENRICHMENT
(Against All Defendants)

192.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

193.   Plaintiffs conferred benefits upon Defendants in the form of investment capital exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00) based upon Defendants' representations that these funds would be used for legitimate real estate investments that would generate returns for Plaintiffs.

194.   Defendants have retained these benefits and have used them for their own purposes, including personal expenses, lifestyle maintenance, and potentially the acquisition of personal assets, without providing any value or consideration to Plaintiffs in return.

195.   Defendants' retention of these benefits without providing the promised investment returns or even returning Plaintiffs' principal violates fundamental principles of justice, equity, and good conscience.

196.   Defendants have been unjustly enriched in an amount exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), plus all gains, profits, and benefits they have derived from the use of Plaintiffs' funds.

197.   Plaintiffs are entitled to the imposition of a constructive trust over all assets acquired by Defendants with Plaintiffs' funds, and to restitution of all amounts by which Defendants have been unjustly enriched.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, for restitution and disgorgement of all amounts by which Defendants have been unjustly enriched, the imposition of constructive trusts, pre-judgment and post-judgment interest, costs, and such other relief as this Court deems just and proper.

## COUNT IX
## FRAUDULENT TRANSFER
(Against All Defendants)

198.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

199.   Plaintiffs are creditors of Defendants by virtue of their status as defrauded investors who are owed the return of their invested capital plus damages for Defendants' fraudulent conduct.

200.   Upon information and belief, Defendants have transferred assets, including funds and real property, to insiders, family members, and affiliated entities without receiving reasonably equivalent value in exchange and with the actual intent to hinder, delay, or defraud Plaintiffs' collection efforts.

201.    These fraudulent transfers include but are not limited to: transfers between the various entity Defendants; transfers from entity Defendants to the individual Defendants personally; transfers to family members including Yang Tao; and transfers to unknown third parties who are insiders or affiliates of Defendants.

202.    Defendants made these transfers with actual intent to defraud, as evidenced by: the transfers to insiders; the lack of reasonably equivalent value; Defendants' insolvency or impending insolvency; Defendants' concealment of assets; and Defendants' pattern of fraudulent conduct.

203.    Alternatively, Defendants made these transfers while insolvent or which rendered them insolvent, without receiving reasonably equivalent value, at a time when they had incurred or were about to incur debts beyond their ability to pay.

204.    All such fraudulent transfers should be avoided and reversed, with the transferred assets returned to Defendants' estates for satisfaction of Plaintiffs' claims, and transferees who are not good faith purchasers for value should be held liable for the value of transferred assets.

WHEREFORE, Plaintiffs demand judgment avoiding all fraudulent transfers, requiring the return of all fraudulently transferred assets, imposing

liability on transferees, awarding costs and attorneys' fees, and granting such other relief as this Court deems just and proper.

## COUNT X
## BREACH OF CONTRACT
(Against Applicable Defendants)

205.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

206.    Plaintiffs and certain Defendants entered into various written agreements, including but not limited to: the ASAM Properties LLC Operating Agreement; the Vipassana Resi LLC partnership agreement; various loan agreements including the August 15, 2022 agreement between Chen and KGG Residential Property Fund Inc.; and multiple promissory notes between Red Flower Capital and Palladio Development LLC.

207.    Under these agreements, Defendants promised to: use invested funds for specific real estate projects; provide returns on investments; make interest payments on loans; repay principal amounts at maturity; provide regular accountings and reports; and otherwise perform various obligations related to the investment projects.

208.    Plaintiffs fully performed all of their obligations under these agreements by providing the required capital contributions and loan proceeds in the amounts and at the times specified in the agreements.

209.   Defendants materially breached these agreements by: failing to use funds for the specified purposes; failing to provide any investment returns; failing to make required interest payments; failing to repay principal at maturity; failing to provide accountings or reports; and completely abandoning their contractual obligations.

210.   As a direct and proximate result of Defendants' breaches of contract, Plaintiffs have suffered damages including but not limited to the loss of all invested capital, lost interest payments, lost opportunity costs, and other consequential damages in an amount exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00).

211.   Many of the breached agreements contain provisions for attorneys' fees and costs, entitling Plaintiffs to recover all fees and costs incurred in enforcing their contractual rights.

WHEREFORE, Plaintiffs demand judgment against the applicable Defendants for compensatory damages exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), attorneys' fees and costs as provided by contract, pre-judgment and post-judgment interest, and such other relief as this Court deems just and proper.

## COUNT XI
## ACCOUNTING
(Against All Defendants)

212.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

213.   By virtue of the partnership and fiduciary relationships between the parties, and by virtue of Defendants' receipt and control of Plaintiffs' funds, Defendants have a duty to account to Plaintiffs for all funds received and the disposition thereof.

214.   Despite repeated demands, Defendants have failed and refused to provide any meaningful accounting of: the Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus in funds received from Plaintiffs; how such funds were used or disposed of; what assets were acquired with such funds; what happened to the proceeds from sales of assets; or the current location and status of Plaintiffs' investments.

215.   The relationship between the parties, involving joint ventures and fiduciary duties, is of such a nature as to require a full and complete accounting of all transactions involving Plaintiffs' funds.

216.   Without a court-ordered accounting, Plaintiffs cannot determine the full extent of their damages, cannot trace their funds, and cannot identify all assets that should be subject to constructive trusts or other equitable remedies.

217.   Plaintiffs are entitled to a complete accounting from all Defendants, covering all funds received, all uses and dispositions of such funds, all assets

acquired, all transfers made, and the current status and location of all assets traceable to Plaintiffs' investments.

WHEREFORE, Plaintiffs demand judgment ordering all Defendants to provide a full and complete accounting, appointing a special master or forensic accountant if necessary, taxing the costs of such accounting to Defendants, and granting such other relief as this Court deems just and proper.

## COUNT XII
## IMPOSITION OF CONSTRUCTIVE TRUST
(Against All Defendants)

218.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

219.    Defendants obtained possession of Plaintiffs' funds exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00) through fraud, breach of fiduciary duty, and other wrongful conduct as alleged herein.

220.    Using Plaintiffs' funds, Defendants acquired various assets including but not limited to real property, improvements to real property, vehicles, bank accounts, and other tangible and intangible property.

221.    Defendants hold all such assets acquired with Plaintiffs' funds as constructive trustees for Plaintiffs' benefit, as it would be inequitable and unconscionable for Defendants to retain the benefit of assets acquired through their fraudulent conduct.

222.    A constructive trust should be imposed over all assets traceable to Plaintiffs' funds, including but not limited to: all real property acquired or improved with such funds; all proceeds from sales of such property; all bank accounts containing such funds; and all other assets acquired with or traceable to Plaintiffs' investments.

223.    Plaintiffs are entitled to a decree requiring Defendants to convey all such assets to Plaintiffs, or in the alternative, to a court-appointed receiver for administration and distribution.

WHEREFORE, Plaintiffs demand judgment imposing a constructive trust over all assets traceable to Plaintiffs' funds, ordering the conveyance of such assets to Plaintiffs or a receiver, requiring an accounting of all such assets, and granting such other relief as this Court deems just and proper.

## COUNT XIII
## PRELIMINARY AND PERMANENT INJUNCTION
(Against All Defendants)

224.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

225.    Plaintiffs have a substantial likelihood of success on the merits of their claims, as the evidence clearly establishes Defendants' fraudulent scheme, conversion of Plaintiffs' funds, and breach of numerous legal duties.

226.    Plaintiffs will suffer irreparable harm without injunctive relief, as Defendants continue to dissipate and transfer assets, properties face tax deed sales and foreclosure, and the passage of time makes recovery increasingly difficult or impossible.

227.    The balance of hardships strongly favors Plaintiffs, as they face the complete loss of their investments while Defendants would suffer no legitimate hardship from being enjoined from dissipating assets that rightfully belong to Plaintiffs.

228.    The public interest favors the issuance of injunctive relief to prevent continued fraud, protect the integrity of business transactions, and ensure that fraudsters cannot benefit from their wrongdoing.

229.    Plaintiffs are entitled to preliminary and permanent injunctions: freezing all assets of Defendants; prohibiting any transfers or encumbrances of assets; requiring the preservation of all documents and records; prohibiting the destruction of evidence; and requiring Defendants to repatriate any offshore assets.

WHEREFORE, Plaintiffs demand the entry of preliminary and permanent injunctions as described above, the posting of security by Defendants, the appointment of monitors or receivers as necessary, and such other relief as this Court deems just and proper.

## COUNT XIV
## APPOINTMENT OF RECEIVER
(Against All Defendants)

230.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

231.   The appointment of a receiver is necessary and appropriate given: the fraudulent nature of Defendants' enterprise; the commingling of assets among multiple entities; the dissipation and transfer of assets; the inability of Defendants to properly manage assets; and the need to preserve assets for the benefit of defrauded investors.

232.   The entity Defendants are mere shells with no legitimate business purpose, existing solely to facilitate fraud, and their continued operation under the control of the individual Defendants poses an ongoing threat to Plaintiffs and other potential victims.

233.   A receiver is necessary to: take control of all entity Defendants and their assets; investigate and trace the disposition of Plaintiffs' funds; pursue recovery of fraudulently transferred assets; manage and preserve real property assets; marshal assets for distribution; and wind up the affairs of the fraudulent enterprise.

234.   The benefits of appointing a receiver far outweigh any potential harm to Defendants, as legitimate business operations will be preserved while

fraudulent activities will be stopped and assets will be preserved for rightful owners.

235.    Plaintiffs are willing to post such bond as the Court deems appropriate, though given the clear evidence of fraud, any bond requirement should be minimal or waived.

WHEREFORE, Plaintiffs demand the appointment of a receiver over all Defendant entities and their assets, the granting of full powers to such receiver to investigate, preserve, and recover assets, the taxing of receiver costs to Defendants, and such other relief as this Court deems just and proper.

## COUNT XV
## PIERCING THE CORPORATE VEIL / ALTER EGO
(Against Individual Defendants)

236.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

237.    The entity Defendants are mere alter egos and instrumentalities of the individual Defendants Giro and Yinan Katsimbrakis, having no separate existence, no legitimate business purpose, and no independence from their individual controllers.

238.    The individual Defendants have so dominated and controlled the entity Defendants that they have no separate corporate existence, as evidenced by: commingling of funds; use of corporate assets for personal purposes; failure

to maintain corporate formalities; undercapitalization; use of entities to perpetrate fraud; and treatment of corporate assets as personal property.

239.    Adherence to the fiction of separate corporate existence would sanction fraud and promote injustice, as the individual Defendants have used the corporate forms solely to defraud Plaintiffs and shield themselves from personal liability for their wrongdoing.

240.    The corporate veils of all entity Defendants should be pierced, and the individual Defendants should be held personally liable for all obligations of the entity Defendants, as the entities are mere shams used to perpetrate fraud.

241.    Additionally, or alternatively, all entity Defendants should be found to be the alter egos of each other, with no separate existence, such that each entity is liable for the obligations of all other entities.

WHEREFORE, Plaintiffs demand judgment piercing the corporate veils of all entity Defendants, holding the individual Defendants personally liable for all damages, declaring all entities to be alter egos of each other and the individual Defendants, and granting such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against all Defendants as follows:

A.  Award compensatory damages against all Defendants, jointly and severally, in an amount exceeding Two Million Five Hundred Thousand Dollars ($2,500,000.00), representing Plaintiffs' actual losses, to be proven at trial;

B.  Award statutory trebling of damages pursuant to 18 U.S.C. § 1964(c) and Fla. Stat. § 895.05(6);

C.  Award punitive damages against all Defendants in an amount to be determined at trial sufficient to punish Defendants for their fraudulent, willful, and malicious conduct and to deter similar conduct in the future;

D.  Enter preliminary and permanent injunctions freezing all assets of Defendants, prohibiting transfers or dissipation of assets, and requiring the preservation of all documents and evidence;

E.  Appoint a receiver over all Defendant entities and their assets with full powers to investigate, trace, recover, and preserve assets for the benefit of Plaintiffs and other victims;

F.  Impose constructive trusts over all assets traceable to Plaintiffs' funds and order the conveyance of such assets to Plaintiffs;

G.  Order a complete accounting by all Defendants of all funds received from Plaintiffs and the disposition thereof;

H.    Pierce the corporate veils of all entity Defendants and hold the individual Defendants personally liable for all damages;

I.    Award pre-judgment and post-judgment interest at the maximum rate allowed by law;

J.    Award Plaintiffs their reasonable attorneys' fees and costs to the extent permitted by law or contract;

K.    Grant such other and further relief as this Court deems just, proper, and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: <u>October 2, 2025</u>                    Respectfully submitted,

**JOHNSON POPE BOKOR**
**RUPPEL & BURNS, LLP**

By:    <u>*/s/ Christopher J. Bonti*</u>
Christopher J. Bonti, Esq.
Florida Bar No. 124312
400 North Ashley Drive, Ste. 3100
Tampa, Florida 33602
Telephone: (813) 225-2500
Facsimile: (813) 223-7118
Email 1: ChrisB@JPFirm.com
Email 2: DCalandra@JPFirm.com
Email 3: LauraH@JPFirm.com
*Attorneys for Plaintiffs*